FILED

2012 Apr-19  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH HOLT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| vs. | ) | |
| | ) | |
| JCJ-RALEIGH, L.L.C., | ) | |
| | | |
| Defendant. | | |

## COMPLAINT

### I. JURISDICTION

1. This is a suit for relief from gender discrimination and retaliation instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Joseph Holt, Jr. ("Plaintiff") timely filed a discrimination charge against defendant JCJ-Raleigh, L.L.C. ("Defendant") with the Equal Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff further filed this suit within 90 days after receipt of his right-to-sue letter issued from the EEOC.

## II. PARTIES

3.  Plaintiff is a citizen of the United States over the age of nineteen and a resident of Jefferson County, Alabama.

4.  Defendant is a limited liability corporation doing business in Jefferson County, Alabama and was at all times relevant to this complaint an employer as contemplated under Title VII.

## III. STATEMENT OF FACTS

5.  Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

6.  Defendant manages apartment complexes.

7.  Plaintiff is male.

8.  On or about February 4, 2010, Defendant hired Plaintiff as a grounds keeper at The Abbey at Vestavia Falls, an apartment complex managed by Defendant in Vestavia Hills, Alabama.

9.  After being employed 90 days, Plaintiff was promoted to "Punch" or "Make Ready" Technician at two properties in Hoover that were adjacent to one another and managed by Defendant, The Abbey at Autumn Village and Ashford Townhomes.

10. Temekka Frazier was Defendant's Property Manager at the sites and became a supervisor of Plaintiff.

11. Frazier is female.

12. After Plaintiff began working under Frazier, she began sexually harassing Plaintiff.

13. During Plaintiff's first week at Autumn/Ashford, Frazier told Plaintiff that she wanted to get "more personal" and asked him personal questions, such as if he had a girlfriend, did he have a "baby mama," "how does it hang?," what kind of women he liked, and whether Frazier was his type of woman.

14. Plaintiff felt uncomfortable and pressured into answering.

15. On or about June 7, 2010, Frazier asked Plaintiff to rub her shoulders.

16. In the latter part of June, Frazier directed Plaintiff, while he was working for defendant, to take her personal vehicle to a gas station to fill it with gas and purchase her a Goody's powder with her debit card and pass code.

17. Plaintiff told Frazier that he was uncomfortable doing this.

18. Frazier told Plaintiff that running personal errands for her was part of his job duties and that, while he was on the property, it was his job to "service her."

19. On another occasion, Frazier walked in to a closet behind Plaintiff and pressed her breasts up against his back.

20. Frazier then closed the door so that they were extremely close and confined in the closet.

21. On another occasion, Frazier came up behind Plaintiff and patted his butt.

22. In the latter part of June, Frazier asked Plaintiff if they could be more than friends and asked him to come to her home and have sex with her.

23. Plaintiff declined.

24. Frazier then said that, if he reported her, no one would believe him because it would be his word against hers and he would be terminated.

25. On or about June 30 or July 1, 2010, Plaintiff met with Frazier and Jenny Moore, Defendant's Regional Manager.

26. Plaintiff complained to Moore about Frazier's sexual harassment, explaining what she had been doing.

27. Moore told Plaintiff that he needed to get a better attitude and that he should be flattered.

28. Plaintiff asked if he could be moved to another property.

29. Moore said that he could not.

30. Plaintiff stated that he had been promised training in his new position but had not received it.

31. Moore told Plaintiff that she would try to get someone to provide him training but that he had to "deal with it" until that could be done.

32. Moore further said that she did not want to hear anything more about "sexual harassment."

33. Frazier subsequently told Plaintiff that she and Moore had worked together before, that Moore would "always have [her] back," and that Plaintiff needed to keep his "mouth shut."

34. Frazier further began telling Plaintiff on a regular basis that he was "illiterate" and "dysfunctional."

35. Frazier further repeatedly threatened Plaintiff with discharge.

36. Further, Plaintiff was not provided any job training.

37. On or about August 2, 2010, Frazier gave Plaintiff an unfounded disciplinary action, despite the fact that Plaintiff had not been provided training as requested.

38. On or about August 5, 2010, Frazier and Moore gave Plaintiff another unfounded disciplinary action, again despite the fact that Plaintiff had not been provided training as requested.

39. On or about August 6, 2010, Plaintiff emailed a written complaint to Paula Filippone, Defendant's Director of Human Resources, about Frazier's sexual harassment of him, his complaint to Moore about it, and the retaliation he

experienced afterward in the form of the name-calling, denial of training, threats of termination, and unfounded disciplinary actions.

40. On or about August 9, 2010, Filippone demoted Plaintiff to grounds keeper and reduced his wages from $13.00 per hour to $10.00 per hour, with further loss of bonus.

41. On or about August 11, 2010, Plaintiff was transferred to the Abbey at Vestavia Falls property as a grounds keeper.

42. On or about August 25, 2010, Plaintiff filed a charge of discrimination against Defendant under Title VII with the EEOC, alleging sexual harassment and retaliation as set forth above.

43. On or about January 13, 2011, Plaintiff filed an amendment to his charge of discrimination against Defendant with the EEOC, alleging that he had been passed over for a promotion in retaliation for his EEOC charge.

44. In April of 2011, Plaintiff was promoted to the position of Maintenance Technician at the Abbey at Wisteria Crest in Hoover, a property managed by Defendant.

45. Sometime in latter June of 2011, the EEOC investigator assigned to Plaintiff's charge advised Defendant that she was recommending a "cause" determination on Plaintiff's original charge.

46. On or about June 22, 2011, Defendant notified the EEOC investigator of its "great disappointment" that a "cause" determination would be recommended.

47. On or about October 12, 2011, Angie Bono terminated Plaintiff.

48. Bono was Defendant's Property Manager at the Abbey at Wisteria Crest.

49. The reason given was that Plaintiff had refused to accept responsibility for failures to do his job or to improve his performance.

50. This was false and pretextual.

## IV. CAUSES OF ACTION

### COUNT I

### TITLE VII

51. Paragraphs 1-50 above are incorporated by reference.

52. Defendant violated Plaintiff's rights under Title VII by (a) subjecting him to sexual and retaliatory harassment, which constituted a hostile environment and/or culminated in an adverse employment action, (b) demoting him in retaliation for his opposition to the sexual harassment to which he was subjected, and (c) terminating his employment in retaliation for his opposition to the sexual and retaliatory harassment to which he was subjected and/or filing a Title VII-based charge of discrimination against it with EEOC.

53. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing Plaintiff and placing him in the position he would have occupied in the absence of Defendant's violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate Title VII;

(iv) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

Respectfully submitted,

_Adam M. Porter_
Adam M. Porter
Attorney for Plaintiff
Alabama Bar ID: ASB-2472-P75A
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: (205) 322-8999
Facsimile: (205) 322-8915
Email: adamporter@earthlink.net

Plaintiff requests trial by struck jury.

_Adam M. Porter_
Attorney for Plaintiff

Defendants' Addresses:
JCJ-Raleigh, L.L.C.
c/o Joe Ciccarello, Jr., Registered Agent
1930 Stonegate Dr.
Birmingham, AL 35242

9