FILED

2012 May-07  PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HOLT, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Vs.** | ) | |
| | ) | **2:12-cv-01150-LSC** |
| **JCJ-RALEIGH, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ANSWER OF JCJ-RALEIGH, LLC

Defendant, JCJ-Raleigh, LLC, ("JCJ-Raleigh") answers Plaintiff's Complaint as follows:

### FIRST DEFENSE

In response to the factual allegations of the Complaint, JCJ-Raleigh responds as follows:

### I. JURISDICTION

1. This is a suit for relief from gender discrimination and retaliation instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

**RESPONSE:**    JCJ-Raleigh agrees that this suit seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, but denies that this court properly exercises jurisdiction over this cause or that this cause is properly before the Court.  The Plaintiff's claims falls within the scope of an alternative dispute resolution agreement under which Plaintiff agreed to the adjudication of any employment-related disputes in a non-judicial forum.

2.    Plaintiff Joseph Holt, Jr. ("Plaintiff") timely filed a discrimination charge against defendant JCJ-Raleigh, L.L.C. ("Defendant") with the Equal Opportunity Commission within 180 days after the last act of discriminatory treatment.  Plaintiff further filed this suit within 90 days after receipt of his right-to-sue letter issued from the EEOC.

**RESPONSE:**    JCJ-Raleigh admits that each of the Plaintiff's three charges were filed within 180 days of the employment action challenged in each charge.  JCJ-Raleigh further admits that the Plaintiff filed this cause within 90 days after the Plaintiff received a Notice of Dismissal in all of his charges.  JCJ-Raleigh does not admit that Plaintiff has fully satisfied all conditions precedent to the maintenance of claims under Title VII.

## II.  <u>PARTIES</u>

3.     Plaintiff is a citizen of the United States over the age of nineteen and a resident of Jefferson County, Alabama.

**RESPONSE:**     JCJ-Raleigh admits the allegations of par. 3 on information and belief.

4.     Defendant is a limited liability corporation doing business in Jefferson County, Alabama and was at all times relevant to this complaint an employer as contemplated under Title VII.

**RESPONSE:**     JCJ-Raleigh admits the allegations of par. 4.

## III.  <u>STATEMENT OF FACTS</u>

5.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

**RESPONSE:**     JCJ-Raleigh adopts and incorporates by reference each of its answers set forth in paragraphs 1-4 above, as if fully set forth herein.

6.    Defendant manages apartment complexes.

**RESPONSE:**    JCJ-Raleigh avers that it provides management services to multi-family communities.

7.    Plaintiff is male.

**RESPONSE:**    JCJ-Raleigh admits the allegations of par. 7.

8.    On or about February 4, 2010, Defendant hired Plaintiff as a Grounds Keeper at The Abbey at Vestavia Falls, an apartment complex managed by Defendant in Vestavia Hills, Alabama.

**RESPONSE:**    JCJ-Raleigh admits the allegations of par. 8.

9.    After being employed 90 days, Plaintiff was promoted to "Punch" or "Make Ready" Technician at two properties in Hoover that were adjacent to one another and managed by Defendant, The Abbey at Autumn Village and Ashford Townhomes.

**RESPONSE:**    JCJ-Raleigh admits that the Plaintiff was promoted a "Make-Ready Technician" position and assigned to work at The Abbey at Autumn Village and the Ashford Townhomes.

10. Temekka Frazier was Defendant's Property Manager at the sites and became a supervisor of Plaintiff.

**RESPONSE:** JCJ-Raleigh admits the allegations of par. 10.

11. Frazier is female.

**RESPONSE:** JCJ-Raleigh admits the allegations of par. 11.

12. After Plaintiff began working under Frazier, she began sexually harassing Plaintiff.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 12.

13. During Plaintiff's first week at Autumn/Ashford, Frazier told Plaintiff that she wanted to get "more personal" and asked him personal questions, such as if he had a girlfriend, did he have a "baby mama," "how does it hang?," what kind of women he liked, and whether Frazier was his type of woman.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 13.

14. Plaintiff felt uncomfortable and pressured into answering.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 14, because they are based on a false predicate. JCJ-Raleigh denies that

Tamekka Frazier asked the Plaintiff the questions described in par. 13, above, and, therefore, the Plaintiff could not have been made "uncomfortable" or "pressured."

15. On or about June 7, 2010, Frazier asked Plaintiff to rub her shoulders.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 15.

16. In the latter part of June, Frazier directed Plaintiff, while he was working for Defendant, to take her personal vehicle to a gas station to fill it with gas and purchase her a Goody's powder with her debit card and pass code.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 16.

17. Plaintiff told Frazier that he was uncomfortable doing this.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 17, because they are based on a false predicate. JCJ-Raleigh denies that Tamekka Frazier asked the Plaintiff to perform the actions described in par. 16, above, and, therefore, the Plaintiff could not have told Tamekka Frazier that he did not feel comfortable performing the alleged actions.

18.    Frazier told Plaintiff that running personal errands for her was part of his job duties and that, while he was on the property, it was his job to "service her."

RESPONSE:    JCJ-Raleigh denies the allegations of par. 18.

19.    On another occasion, Frazier walked into a closet behind Plaintiff and pressed her breasts up against his back.

RESPONSE:    JCJ-Raleigh denies the allegations of par. 19.

20.    Frazier then closed the door so that they were extremely close and confined in the closet.

RESPONSE:    JCJ-Raleigh denies the allegations of par. 20.

21.    On another occasion, Frazier came up behind Plaintiff and patted his butt.

RESPONSE:    JCJ-Raleigh denies the allegations of par. 21.

22.    In the latter part of June, Frazier asked Plaintiff if they could be more than friends and asked him to come to her home and have sex with her.

RESPONSE:    JCJ-Raleigh denies the allegations of par. 22.

23.    Plaintiff declined.

**RESPONSE:**    JCJ-Raleigh denies the allegations of par. 23, because they are based on a false predicate.   JCJ-Raleigh denies that Tamekka Frazier requested the Plaintiff to be more than just friends or that she asked him to have sex with her and, therefore, he could not have declined requests that were not made.

24.    Frazier then said that, if he reported her, no one would believe him because it would be his word against hers and he would be terminated.

**RESPONSE:**    JCJ-Raleigh denies the allegations of par. 24.

25.    On or about June 30 or July 1, 2010, Plaintiff met with Frazier and Jenny Moore, Defendant's Regional Manager.

**RESPONSE:**    JCJ-Raleigh admits that in late June or early July 2010, Plaintiff met with Jenny Moore, Regional Manager, and Temekka Frazier, Property Manager.

26.    Plaintiff complained to Moore about Frazier's sexual harassment, explaining what she had been doing.

**RESPONSE:** JCJ-Raleigh avers that in the meeting in late June or early July 2010, Plaintiff stated that when he first started working at Autumn / Ashford he showed a picture of his son to Ms. Frazier and she asked him if there was a "baby's mama." To the extend not admitted herein, JCJ-Raleigh denies the allegations of par. 26, and, in particular, that Ms. Frazier engaged in any conduct that could be construed as "sexual harassment."

27. Moore told Plaintiff that he needed to get a better attitude and that he should be flattered.

**RESPONSE:** JCJ Raleigh admits that the purpose of the meeting in late June or early July 2010 was to address the Plaintiff's attitude as it pertained to his communications with his supervisors, Temekka Frazier, Property Manager, and Rob Berry, Maintenance Supervisor, and that Ms. Moore expected him to show respect for his supervisors. To the extent not admitted herein, JCJ-Raleigh denies the allegations of par. 27.

28. Plaintiff asked if he could be moved to another property.

**RESPONSE:**    JCJ-Raleigh admits that in early August 2010, Plaintiff  requested to be transferred back to his former position as a Grounds Keeper at The Abbey at Vestavia Falls.

29.    Moore said that he could not.

**RESPONSE:**    JCJ-Raleigh denies the allegation of par. 29 and avers that Ms. Moore told the Plaintiff that the transfer he requested was an option if the new Grounds Keeper for Vestavia Falls had not started work. JCJ-Raleigh further avers that Ms. Moore learned that the new Grounds Keeper at The Abbey at Vestavia Falls had begun work and there was no other community managed by JCJ-Raleigh with an open Make Ready Technician or Grounds Keeper position.

30.    Plaintiff stated that he had been promised training in his new position but had not received it.

**RESPONSE:**    JCJ-Raleigh admits that after it discovered the Plaintiff had submitted a false punch report on August 3, 2010, he then claimed that he had not been provided training for the duties required of a Make Ready Technician.  JCJ-Raleigh further avers that Ms. Moore asked the Plaintiff to provide her with a punch list indicating the tasks for which he

needed training, and that when the Plaintiff did so, the punch list he provided indicated he needed training in every task on the list.

31.    Moore told Plaintiff that she would try to get someone to provide him training but that he had to "deal with it" until that could be done.

**RESPONSE:**    JCJ-Raleigh denies the allegation of par. 31 and avers that Ms. Moore told the Plaintiff that she would arrange the training he claimed he needed, but that she could not do so until he submitted the punch list form indicating the training he needed. JCJ-Raleigh further avers that the punch list submitted by the Plaintiff  indicated he needed training on every task on the punch list, and that JCJ-Raleigh provided the Plaintiff with the training he indicated he needed.  To the extent not admitted herein, JCJ-Raleigh denies the allegations of par. 31.

32.    Moore further said that she did not want to hear anything more about "sexual harassment."

**RESPONSE:**    JCJ-Raleigh denies the allegations of par. 32.

33.   Frazier subsequently told Plaintiff that she and Moore had worked together before, that Moore would "always have [her] back," and that Plaintiff needed to keep his "mouth shut."

**RESPONSE:**      JCJ-Raleigh denies the allegations of par. 33.

34.   Frazier further began telling Plaintiff on a regular basis that he was "illiterate" and "dysfunctional."

**RESPONSE:**      JCJ-Raleigh denies the allegations of par. 34.

35.   Frazier further repeatedly threatened Plaintiff with discharge.

**RESPONSE:**      JCJ-Raleigh denies the allegations of par. 35.

36.   Further, Plaintiff was not provided any job training.

**RESPONSE:**      JCJ-Raleigh denies the allegations of par. 36 and avers that JCJ-Raleigh provided Plaintiff with a formal training program to teach him the tasks he indicated he could not perform.

37.   On or about August 2, 2010, Frazier gave Plaintiff an unfounded disciplinary action, despite the fact that Plaintiff had not been provided training as requested.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 37, and avers that the Plaintiff did not contend he needed training until after he received corrective action in July and August 2010.

38. On or about August 5, 2010, Frazier and Moore gave Plaintiff another unfounded disciplinary action, again despite the fact that Plaintiff had not been provided training as requested.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 38, and avers that the Plaintiff did not contend he needed training until after he received corrective action in July and August 2010.

39. On or about August 6, 2010, Plaintiff emailed a written complaint to Paula Filippone, Defendant's Director of Human Resources, about Frazier's sexual harassment of him, his complaint to Moore about it, and the retaliation he experienced afterward in the form of the name-calling, denial of training, threats of termination, and unfounded disciplinary actions.

**RESPONSE:** JCJ-Raleigh admits that on August 6, 2010, Plaintiff emailed a written complaint to Paula Filippone, Director of Human Resources. JCJ-Raleigh avers that the written complaint speaks for itself.

40.     On or about August 9, 2010, Filippone demoted Plaintiff to Grounds Keeper and reduced his wages from $13.00 per hour to $10.00 per hour, with further loss of bonus.

**RESPONSE:**     JCJ-Raleigh denies the allegations of par. 40 and avers that it transferred the Grounds Keeper just hired for The Abbey at Vestavia Falls to another property so it could honor the Plaintiff's request to be transferred back to the Grounds Keeper position at The Abbey at Vestavia Falls.  JCJ-Raleigh admits that the Plaintiff's compensation went from the $13.00 per hour, the starting rate paid to a Make Ready Technician, to a $10.00 per hour, the rate paid to a Grounds Keepers at The Abbey at Vestavia Falls.  JCJ-Raleigh further avers that the Plaintiff would not have been entitled to a bonus had he remained a Make-Ready Technician for Autumn / Ashford.

41.     On or about August 11, 2010, Plaintiff was transferred to the Abbey at Vestavia Falls property as a Grounds Keeper.

**RESPONSE:**     JCJ-Raleigh admits that it honored the Plaintiff's request to be transferred back to his former position as a Grounds Keeper at The Abbey at Vestavia Falls.

42.     On or about August 25, 2010, Plaintiff filed a charge of discrimination against Defendant under Title VII with the EEOC, alleging sexual harassment and retaliation as set forth above.

**RESPONSE:**     JCJ-Raleigh admits that on August 25, 2010, the Plaintiff filed a charge of discrimination with EEOC alleging sexual harassment and retaliation.

43.     On or about January 13, 2011, Plaintiff filed an amendment to his charge of discrimination against Defendant with the EEOC, alleging that he had been passed over for a promotion in retaliation for his EEOC charge.

**RESPONSE:**     JCJ-Raleigh admits that on January 13, 2011, the Plaintiff filed an "amendment" to his EEOC charge alleging that he had been passed over for a promotion in retaliation of his filing of an EEOC charge.

44.     In April of 2011, Plaintiff was promoted to the position of Maintenance Technician at the Abbey at Wisteria Crest in Hoover, a property managed by Defendant.

**RESPONSE:**     JCJ-Raleigh admits the allegations of par. 44.

45.     Sometime in latter June of 2011, the EEOC investigator assigned to Plaintiff's charge advised Defendant that she was recommending a "cause" determination on Plaintiff's original charge.

**RESPONSE:**     JCJ-Raleigh admits the allegations of par. 45.

46.     On or about June 22, 2011, Defendant notified the EEOC investigator of its "great disappointment" that a "cause" determination would be recommended.

**RESPONSE:**     JCJ-Raleigh admits the allegations of par. 46.

47.     On or about October 12, 2011, Angie Bono terminated Plaintiff.

**RESPONSE:**     JCJ-Raleigh admits that on October 12, 2011, JCJ-Raleigh terminated the Plaintiff's employment.

48.     Bono was Defendant's Property Manager at The Abbey at Wisteria Crest.

**RESPONSE:**     JCJ-Raleigh admits that Angie Bono was the Property Manager at The Abbey at Wisteria Crest at the time JCJ-Raleigh terminated the Plaintiff's employment.

49.    The reason given was that Plaintiff had refused to accept responsibility for failures to do his job or to improve his performance.

**RESPONSE:**    JCJ-Raleigh admits the allegations of par. 49.

50.    This was false and pretextual.

**RESPONSE:**    JCJ-Raleigh denies the allegations of par. 50.

## IV.  CAUSES OF ACTION

### COUNT I

### TITLE VII

51.    Paragraphs 1-50 above are incorporated by reference.

**RESPONSE:**    JCJ-Raleigh adopts and incorporated by reference its responses to paragraphs 1-50, above, as if fully set forth herein.

52.    Defendant violated Plaintiff's rights under Title VII by (a) subjecting him to sexual and retaliatory harassment, which constituted a hostile environment and/or culminated in an adverse employment action, (b) demoting him in retaliation for his opposition to the sexual harassment to which he was subjected, and (c) terminating his employment in retaliation for his opposition to the sexual

and retaliatory harassment to which he was subjected and/or filing a Title VII-based charge of discrimination against it with EEOC.

**RESPONSE:** JCJ-Raleigh denies the allegations of par. 52.

53. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress.

**RESPONSE:** JCJ-Raleigh denies that it has engaged in any discriminatory or retaliatory acts with respect to the terms, conditions and privileges of Plaintiff's employment, and further denies that the Plaintiff has suffered any injury as the proximate result of any wrong doing on the part of JCJ-Raleigh.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing Plaintiff and placing him in the position he would have occupied in the absence of Defendant's violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost

benefits and perquisites of employment with interest, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii)   That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate Title VII;

(iv)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

**RESPONSE:**      JCJ-Raleigh denies that Plaintiff is entitled to any of the relief sought in Count I of the Complaint.

**FIRST DEFENSE**

The Court lacks dispositive jurisdiction over this cause.

**SECOND DEFENSE**

The Plaintiff has waived a judicial forum for his claims.

**THIRD DEFENSE**

The Plaintiff is estopped from pursuing any claim related to his employment in a judicial forum.

**FOURTH DEFENSE**

To the extent that the Plaintiff complains of alleged acts or omissions occurring more than 180 days prior to the filing of his charges of discrimination with the EEOC, the Plaintiff has failed to satisfy the conditions precedent to the maintenance of an action under Title VII with respect to such acts or omissions.

**FIFTH DEFENSE**

The Plaintiff is not entitled to the relief sought under Title VII to the extent the bases for the relief exceeds the bases set forth in the Plaintiff's charges of discrimination filed with the EEOC.

**SIXTH DEFENSE**

JCJ-Raleigh denies that the Plaintiff was subjected to a hostile work environment on the basis of his gender.

**SEVENTH DEFENSE**

The Plaintiff cannot satisfy his burden of proving that on the basis of his gender his work environment was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment.

**EIGHTH DEFENSE**

The conduct about which the Plaintiff complains, to the extent it occurred, is not actionable violation of Title VII.

## NINTH DEFENSE

JCJ-Raleigh denies that it can be held vicariously liable for the alleged actions of an employee.

## TENTH DEFENSE

JCJ-Raleigh asserts the *Faragher / Burlington Northern* affirmative defense in defense of the Plaintiff's claims under Title VII.

## ELEVENTH DEFENSE

JCJ-Raleigh denies that it retaliated against the Plaintiff for engaging in any activity protected by Title VII.

## TWELFTH DEFENSE

JCJ-Raleigh avers that any action taken with respect to the terms and conditions of the Plaintiff's employment was based upon legitimate, non-discriminatory reasons other than gender or activity protected by Title VII.

## THIRTEENTH DEFENSE

To the extent that the Plaintiff has suffered or will suffer any injury or damages, which JCJ-Raleigh denies, such injuries or damages were not proximately caused by any act or omission of JCJ-Raleigh.

## FOURTEENTH DEFENSE

To the extent that JCJ-Raleigh may be held liable for punitive damages under Title VII, the Plaintiff is not entitled to an award of punitive damages under Title VII unless and until he satisfies his burden of proving that JCJ-Raleigh engaged in a discriminatory practice with malice or with reckless indifference to the Plaintiff's federally protected rights.

## FIFTEENTH DEFENSE

Any recovery of monetary damages by the Plaintiff under Title VII is barred to the extent that JCJ-Raleigh would have made the same decisions regarding the terms and conditions of the Plaintiff's employment in the absence of any unlawful discriminatory or retaliatory motive.

## SIXTEENTH DEFENSE

Any recovery of damages under Title VII is barred to the extent that the Plaintiff failed to mitigate his damages.

## SEVENTEENTH DEFENSE

The Plaintiff has waived any right to a jury trial.

## EIGHTEENTH DEFENSE

The Complaint fail to state a claim against JCJ-Raleigh upon which relief can be granted.

## NINETEENTH DEFENSE

Any award of compensatory or punitive damages is subject to the statutory caps set forth in 42 U.S.C. § 1981a.

## TWENTIETH DEFENSE

The Plaintiff's prosecution in this Court of the claims asserted in this cause are barred by the Federal Arbitration Act.

## TWENTY-FIRST DEFENSE

Plaintiff has waived his right to a trial by jury with respect to any claim asserted, or remedy sought, in this cause.

## TWENTY-SECOND DEFENSE

These proceedings are subject to dismissal on enforcement of JCJ-Raleigh right to enforce its right to arbitration.

## TWENTY-THIRD DEFENSE

The Plaintiff has failed to state a claim upon which relief can be granted.


WHEREFORE, JCJ-Raleigh, LLC, requests that the Court dismiss Plaintiff's legally deficient claims, to award it attorneys' fees and costs expended herein as allowed by law, and for such other and further relief as the Court deems just and proper.

/s/ David B. Walston
David B. Walston

/s/ R. Jordan Wood
R. Jordan Wood

Attorneys for Defendant JCJ-Raleigh, LLC

**OF COUNSEL:**

CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203-2696
Telephone:  (205) 795-6588
Facsimile:  (205) 328-7234
E-Mail:      dbwalston@csattorneys.com
                 rjwood@csattorneys.com

**CERTIFICATE OF SERVICE**

Unless otherwise served by the ECF system, I certify that I have served a copy of the above and foregoing Answer on the attorney of record by placing a copy in the United States Mail, properly addressed, first-class postage pre-paid on this the 7th day of May, 2012.

Adam M. Porter
2301 Morris Avenue, Suite 102
Birmingham, AL 35203

/s/ David B. Walston
OF COUNSEL